Beebe *v.* Ayres.

[CORTLAND GENERAL TERM, November 9, 1858. *Gray, Mason, Balcom* and *Campbell,* Justices.]

---

## BEEBE *vs.* AYRES.

Where the regulations of a rail road company require the conductors upon each division of the road, on starting with each train, to examine the tickets of the passengers and tear off from a corner thereof the letter indicating that division, and if a passenger desires to stop over, at any point, the conductor is authorized so to indorse his ticket as to secure his passage from that point to the end of the division; but if the ticket is *not* so indorsed, other conductors on the same division are to disregard it and collect fare, or put the passenger off the cars; if a passenger, after entering upon a particular division and having the letter appropriate to that division torn off his ticket, stops over at a station without giving notice to the conductor, or asking him to make the proper indorsement upon his ticket, and, the next day, proceeds upon his journey, on another train, and presents the ticket, thus mutilated and without indorsement, to the conductor, the latter is not bound to receive the same; but will be justified in collecting the fare of the passenger, or in putting him off the cars, upon his refusing to pay.

Beebe *v.* Ayres.

Such a regulation is a reasonable one, and is necessary, in order to guard against fraud.

If a passenger chooses to stop and lie over, it is not unreasonable to require him to procure his ticket to be so indorsed as to make it a voucher to the conductor having charge of a subsequent train.

Under such a regulation, the rule of evidence is prescribed to the conductor. What is written or printed upon the ticket is the only evidence he has any right to take. If the letter indicating the passenger's right to ride upon a particular division is torn from the ticket, it is evidence to the conductor that the holder has ridden over that division; and the latter has no right to supply what that letter indicated, by parol proof.

In such a case it is not necessary to prove that the passenger knew the object of divesting the ticket of its corners. He will be presumed to have purchased his ticket with reference to the regulations of the road.

Where a verdict is taken for the plaintiff, subject to the opinion of the court, if there are exceptions in the case, upon which either party has a right to be heard, on a motion for a new trial, the court cannot give judgment for the defendant, on the verdict, but the verdict will be set aside as for a mistrial.

THIS action was tried at the Broome circuit, in October, 1857, before BALCOM, J., and a jury, and upon the trial the following facts appeared, viz: That the New York and Erie Rail Road, upon which the plaintiff was a passenger and the defendant a conductor, consists of four divisions. The eastern, extending from Piermont to Port Jervis; the Delaware, extending from Port Jervis to Susquehanna; the Susquehanna, extending from Susquehanna to Hornellsville, and the western, extending from Hornellsville to Dunkirk. And that the tickets issued to passengers upon the road, have upon them, at each corner, a printed letter, which is the initial of one of the several divisions of the road; and that by the regulations of the rail road company, each conductor of a train passes over the whole of a single division of the road, and is required to go through the cars when first entering upon his division, and examine the ticket of each passenger and tear off from the corner of it the letter indicating the division over which he runs, and then return the ticket to the passenger; and if a passenger desires to lie over at any point on the division, the conductor is authorized so to indorse his

ticket as to secure his passage from that point to the end of the division, if the ticket extends so far, and when so indorsed, other conductors on the same division are to receive it. If not indorsed, other conductors on the same division are to disregard it, and collect fare; and if the passenger refuses to pay or to leave the car upon request, it is made the duty of the conductor to put him off. While these regulations were in force and on the 16th of September, 1856, the plaintiff purchased a passenger ticket from Newburgh, on a branch of the eastern division, to Addison, on the Susquehanna division, having upon it the printed words, "Good this trip only." He started on the trip on the evening of the day he purchased the ticket, and passed on as far as Deposit, on the Delaware division, and then lay over one train, and on the morning of the next day went on board of a slow train and stopped off again at Great Bend, on the Susquehanna division, where he remained until the afternoon of the 17th of September, when he got on board of a train of which the defendant was conductor. Upon leaving Susquehanna, (the commencement of that division,) on his way to Great Bend, a new conductor came on board and called for tickets. The plaintiff exhibited his ticket; the conductor took it and tore off the corner having upon it the letter indicating the division over which they were then passing; with the ticket in this condition the plaintiff got on board of the train conducted by the defendant, by whom he was asked for his ticket. He exhibited one having all the corners with the letters indicating the respective divisions over which he had passed, including the Susquehanna division, torn off. This ticket thus mutilated, the defendant refused to receive, and demanded of the plaintiff his fare, which the plaintiff refused to pay, insisting that he had paid his fare from Newburgh to Addison. The defendant told him he could not help that; his instructions were such that he could not receive his ticket. The plaintiff said "do you suppose that I would lie?" To which the defendant replied, "I suppose what you say is true, but I cannot take the ticket,"

and if he did not pay he should put him off; that he had better keep the ticket he had, and when he got to Binghamton buy another. When the train arrived at Binghamton the plaintiff refused to purchase another ticket and the defendant put him off the train. The defendant being examined as a witness in his own behalf, testified that he had no reason to believe the plaintiff had traveled on the ticket any further than to Great Bend. There was evidence tending to show that the conductor on the Delaware division allowed the plaintiff to pass from Deposit to Susquehanna, notwithstanding the corner of the ticket having upon it the letter indicating that division had been previously torn off by the conductor who had charge of the previous train from Port Jervis to Susquehanna, and that the conductor having charge of the train from Susquehanna to Hornellsville, upon which the plaintiff rode from Susquehanna to Great Bend, advised the plaintiff to lie over at Great Bend until a faster train should come along. But it did not appear that the conductor knew he got off at that place, or that the plaintiff asked the conductor so to indorse his ticket that it would be good for the next train.

*Dickinson & Wright*, for the plaintiff.

*Geo. Sidney Camp* and *J. J. Taylor*, for the defendant.

GRAY, J. It does not appear from the case that a point was made upon the trial, founded upon the conduct of the two conductors—of the one, in permitting the plaintiff to ride upon a mutilated ticket from Deposit to Susquehanna, in violation of the rules of the company, or of the other in advising the plaintiff to lie over at Great Bend. And if one had been made, I am unable to perceive how the conduct of one conductor, in violating the rules of his employers, could prejudice another more faithful than himself, who adhered to his instructions and discharged his duties under them. Nor can I per-

ceive that any wrong was committed by the conductor who advised the plaintiff to lie over at Great Bend. The plaintiff was not advised to omit getting his ticket indorsed, and if he had been, it would have been the error of that conductor and not the error of the defendant. It must be borne in mind that this action is not against the company, for any wrongful act of its employee, or against any employee whose acts have misled the plaintiff, but against one who has committed no wrong, provided the regulations of the company were reasonable and were reasonably executed. Nor can it prejudice the defendant that he believed the plaintiff's statement to be true. The company, by their regulations, had prescribed rules of evidence for him. He had no right to act upon oral evidence; what was written or printed upon the passenger's ·ticket was the only evidence he had the right to take; and when the letter indicating the plaintiff's right to ride upon the Susquehanna division was torn from the ticket, it was evidence to him that the plaintiff had ridden over that division, and the plaintiff had no right to supply what that letter indicated, by parol proof. Once admit the right of the conductor to take the word of a passenger as a substitute for a ticket or what a ticket indicates, and frauds innumerable would be committed by dishonest travelers, upon over credulous conductors. All concede that the important interests which rail road companies have at stake, render regulations to be observed, not only by their conductors, but by passengers on their trains, indispensable to secure each against imposition by the other. The right of the company to make such rules stands upon authority not to be questioned here. (*Hibbard* v. *The New York and Erie Rail Road Company,* 1 *E. P. Smith,* 455.) The regulations of the road, however, must be reasonable or its patrons are not bound by them. A part of the contract between the plaintiff and the rail road company was that the ticket given him should be good only for the trip he commenced on the day he purchased the ticket; and for the purpose of ascertaining how much of the trip he made, each

conductor, by the regulations of the company, was required, at the commencement of his division, to call for and examine, then, the tickets of the passengers, and tear off from each ticket the corner having upon it the letter indicative of his division. This was a necessary regulation to guard against fraud; if the letter should not be torn off until after leaving the station nearest the end of the division, the plaintiff might have traveled to within a few miles of Hornellsville and stepped off with his ticket in his pocket, and passed it over to another, or retained it himself and rode again with some other conductor, from Susquehanna to the same station where he got off, as often as he pleased, unless he should be recognized by some conductor who could detect him in the fraud; or the ticket might be passed from one to another and answer the purposes of a hundred passengers from the beginning of the Susquehanna division to the station next to its end. The plaintiff professes not to have understood why the corners of the ticket were torn off. His want of intelligence in that respect cannot aid him; he had ridden over the road often, and of course must have seen printed upon the corners of his ticket the letters indicating the respective divisions of the road, and when he had seen a conductor of each division he passed, tear off the corner of his ticket, having upon it the letter indicating the division over which he was traveling, he had the means of knowing that his ticket, which by its terms was good only for the trip he was then taking, was being divested of its corners that the ticket itself might show how much of the trip he had traveled. But it is not necessary to prove that he knew the object of divesting the ticket of its corners. He is presumed to have purchased the ticket in reference to the regulations of the road. (*Northern Rail Road Company* v. *Page*, 22 *Barb*. 130.) And when he chose to lie over a train, there was nothing unreasonable in requiring him to procure his ticket to be so indorsed as to make it a voucher to the conductor who should have the charge of the next or some subsequent train. No point is made that the regulations of

the company were unreasonably executed by the defendant, by the exercise of too great force in ejecting the plaintiff from the car. The verdict upon the whole case was taken, subject to the opinion of this court, and I am of opinion, for the reason stated, that the defendant should have judgment upon the verdict.

BALCOM, J. The plaintiff purchased a ticket at Newburgh which entitled him to a ride from that place, in a passenger car on the New York and Erie Rail Road, to Addison. The words "good this trip only," were on it, and it was dated "Sept. 16, 1856." The letters E. D. S. W. were on the corners thereof. Those letters, according to the rules of the rail road company, were to be torn off by the conductors of the train, on which the plaintiff should ride, in this manner, to wit: the conductor on the eastern division of the road was to tear off the letter E; the one on the Delaware division was to tear off the letter D; and the one on the Susquehanna division was to tear off the letter S.

The plaintiff by virtue of the ticket, rode in the afternoon and night of the 16th day of September, 1856, upon the rail road as far west as Deposit, on the Delaware division; but before he arrived there the conductors of the train on which he rode had torn the letters E. and D. off the ticket. He stopped at Deposit and staid there till the next day, as he claimed at the trial, because the conductor on the eastern division of the road had told him he could stop there and it would be all right. But he did not have the conductor on the Delaware division indorse any thing upon the ticket to show his right to stop at Deposit, as he should have done, according to the rules of the rail road company. In the forenoon of the 17th day of September, 1856, the plaintiff rode on an emigrant train by virtue of the ticket, without objection from the conductor thereof to Susquehanna, where another conductor took that train. He then rode from that place on the same train, by virtue of the ticket, to Great Bend; but

before he arrived there the conductor who took that train at Susquehanna, tore the letter S. off the ticket, and handed it back to the plaintiff. The express train which the defendant ran as conductor, was then behind the emigrant train, but it was a much faster one than the latter, and was to pass the latter before arriving at Addison. The plaintiff left the emigrant train at Great Bend and waited there until the express train came up and then got upon that. He did this, as he testified upon the trial, because the conductor of the emigrant train told him, if he was in a hurry he had better do so: but he did not tell such conductor that he should leave his train there, and take the express train; neither did he have such conductor make an indorsement upon the ticket, to show the conductor of the express train that he had not ridden on the Susquehanna division of the road to Addison by virtue of the ticket. After the express train left Great Bend, and before it arrived at Binghamton, the defendant, as conductor thereof, demanded fare of the plaintiff, who presented the above mentioned ticket to him, the letter S. being torn off. The defendant refused to accept the ticket, and informed the plaintiff that unless he paid the usual fare to him, he should put him off the train. The plaintiff refused to pay fare to the defendant, on the ground that he had not before traveled on the road by virtue of his ticket west of Great Bend. After the train was stopped at Binghamton the plaintiff refused to leave the cars or pay fare to the defendant; and the defendant then forcibly ejected him from the cars and left him at that place.

The plaintiff brought this action to recover damages for being thus forcibly ejected from the express train of cars by the defendant, at Binghamton. The jury assessed the plaintiff's damages (on the assumption that he could maintain the action,) at $250; and by the direction of the judge who presided upon the trial, the jury found a verdict in favor of the plaintiff for $250 damages, subject to the opinion of the court at the general term.

Is the plaintiff entitled to judgment upon the verdict? In the first place the plaintiff did not inform the conductor of the emigrant train that he should leave that train and take the express train at Great Bend; and it is reasonable to suppose, if he had so informed him, such conductor would have told him he must have his ticket indorsed, to enable him to show the conductor of the express train that he had not ridden by virtue of it, west of Great Bend.

The plaintiff knew, when he went aboard of the express train, his ticket did not show that he was entitled to ride on that train; and he had no right to presume that the conductor of the emigrant train had authority to permit him to change trains without indorsing a statement to that effect upon his ticket. The plaintiff was on the express train, without any evidence of his right to ride there; certainly without such evidence as the defendant, as conductor thereof, was instructed, by the rail road company, to require of him. And granting that he was there by reason of what the conductor of the emigrant train said to him, that did not excuse him from furnishing evidence to the defendant of his right to ride on the express train, when he refused to pay fare; for what the conductor of the emigrant train said to the plaintiff was *unauthorized by the rail road company,* and therefore was not binding upon the defendant. The plaintiff had notice of this, before he was put out of the cars by the defendant; and he was not put out until after he had refused to leave the cars or pay fare to the defendant. The defendant obeyed the rules and regulations of the rail road company in ejecting the plaintiff from the cars; and I think he was justified in all he did towards the plaintiff at the time. (*See* 1 *Smith,* 455.)

But we cannot give judgment for the defendant on the verdict, for the reason that there are exceptions in the case, upon which either party has the right to be heard on a motion for a new trial. The verdict must therefore be set

aside as for a mistrial, costs to abide the event.   (*See* 2 *Smith,* 602, 606.)

All the justices concurred in both of the above conclusions.

Verdict set aside as for a mistrial, costs to abide the event.

[CORTLAND GENERAL TERM, November 9, 1858.  *Gray, Mason, Balcom* and *Campbell,* Justices.]