Stone v. The C. & N. W. R. Co.

REVERSED.

## STONE v. THE C. & N. W. R. Co.

1. **Practice:** WHERE VERDICT IS DIRECTED BY COURT. Where, after the plaintiff has submitted his case, the court directs a verdict for the defendant, the plaintiff is entitled to have everything on which his right to recover depends, and which the evidence tended to prove, regarded as established by the testimony.

2. **Railroads:** PURCHASE OF TICKET: CONTRACT. The purchase of a ticket constitutes a contract between the company and passenger, in accordance with which the former undertakes to carry the latter to his destination on the particular train he takes and no other, unless he is permitted by some regulation of the company, upon compliance with some condition, to stop over at an intervening station and resume his journey by another train. The contract for the transportation of the passenger is an entirety, and if without the consent of the company he stops before reaching his destination, he cannot again impose the obligation of the contract upon the company by insisting that he shall be carried the remainder of the journey.

3. ———: NON-PAYMENT OF FARE. A passenger who refuses to pay his fare becomes a trespasser, not entitled to the rights and privileges of the passenger, and may rightfully be ejected from the train by an employe of the company.

4. ———: ———: MISCONDUCT OF EMPLOYES. By refusal to pay his fare the passenger deprives himself of the right to insist upon courteous treatment from the company's employes and cannot complain of their misconduct.

5. ———: BREACH OF CONTRACT. The cause of action being a breach of contract to carry, the passenger cannot be permitted to show that he was ejected from the train with insult and abuse, or that the conductor was intoxicated.

6. ———: EVIDENCE. Testimony to the effect that the plaintiff had been permitted at other times to stop over at intervening stations and ride upon subsequent trains with the same ticket and without "stop-over" checks, was *held* inadmissible.

7. ———: REFUSAL TO PAY FARE: EXCLUSION OF PASSENGER. Where a passenger has been ejected from a train for non-payment of fare, he must pay the fare from the station where he first entered the train before he can insist upon being carried forward upon the same train, and if he purchase a ticket at the point where he was ejected, the conductor may nevertheless exclude him from the train.

8. ———: ———: INTENT OF PASSENGER. That the passenger attempted to re-enter the train with good intent and without a purpose to defraud the company would not aid him to a recovery.

9. **Practice**: VERDICT BY DIRECTION OF COURT. Where the court directs the jury to find a verdict, it is not necessary that the direction should be in writing, it not being in the nature of an instruction.

### *Appeal from Marshall District Court.*

### FRIDAY, OCTOBER 19.

ACTION to recover damages sustained by plaintiff caused by wrongful ejection from the cars on defendant's road. The petition contains two counts. The first states that plaintiff purchased of the defendant at Clinton, Iowa, a first class ticket from that place to Sioux City, Iowa, and paid the regular fare therefor, and took passage on a train of defendant; that when he had gone some distance on his journey a red (conductor's) check was given him; that he left the train at Marshalltown and took the same train next day, and when several miles out "on request he produced said ticket and red check, but the conductor refused to permit plaintiff to ride, and with violence, insult and injury, unlawfully ejected him from the cars at the next station (State Center), in the presence of many passengers of both sexes, causing much delay and loss on important business."

The second count states that plaintiff purchased at State Center of the defendant a ticket from that point to Boone and attempted to take passage on a train on defendant's road, but was forcibly restrained and prevented from so doing by the conductor, without his fault, and was grossly abused, insulted

and misused, whereby he was greatly damaged. Exemplary damages are claimed.

The answer admits the purchase of ticket as stated, the ejection of the plaintiff from the train and the refusal to permit him to ride thereon, but denies all unlawful or insulting conduct toward plaintiff. The answer further states that when plaintiff "stopped over at Marshalltown his ticket had been punched, that the red check warned him to get a stop-over ticket; that this he did not do, and, therefore, when he resumed his ride by the rules of defendant plaintiff was required to pay from Marshalltown to Boone, and refusing was told to leave the train, which he did. That then plaintiff purchased a ticket from that point (State Center) to Boone, and defendant refused to permit a ride, unless plaintiff also paid the fare from State Center to Marshalltown, and for refusal so to do was prevented from taking passage, without insult or unnecessary force." At the conclusion of the testimony the court directed the jury to find for the defendant, which they did, and judgment being entered on the verdict plaintiff appeals.

*H. E. J. Boardman*, for appellant.

*N. M. Hubbard*, for appellee.

SEEVERS, J.—I. The court having directed the jury to return a verdict for the defendant, the plaintiff is entitled to

1. PRACTICE: where verdict is directed by court.

have everything regarded as established by the testimony which the evidence tended to prove, on which his right to recover depends. Such right on the cause of action stated in the first count of the petition depended solely on the question whether he was lawfully ejected from the cars at State Center. The facts on which this right must depend were undisputed and entirely free from any doubt. The ticket purchased at Clinton by the plaintiff on its face stated it was good for "one first-class passage to Sioux City, on presentation of this with coupons attached;" the second part being a coupon saying, "Mo. Valley Junction to Sioux City, worthless if detached," and the third part being a

coupon saying, "Clinton to Mo. Valley Junction, worthless if detached." The plaintiff having taken his seat in the train was approached when a few miles out by the conductor, to whom he presented the ticket, which was then punched by the conductor through the coupon on which were the words, "Clinton to Mo. Valley Junction, worthless if detached." At the same time the conductor gave the plaintiff a red check on which was printed in large letters, "Conductor's check, keep this in sight;" also, in small print, "Persons desiring to stop over must get special check." Signed, "Hughitt, conductor." The train arrived at Marshalltown at 11 o'clock, P. M., when plaintiff left it without having obtained any stop-over check, remained twenty-four hours and resumed his journey on the next night on the train passing through Marshalltown at the same hour. A short distance from that place the conductor came along and inquired for tickets. This conductor was not the same one who had charge of the train the previous night. The plaintiff presented the said ticket and red check he had received the evening previous, but the conductor refused to recognize the same as sufficient and informed the plaintiff that he must either pay his fare to Boone, to which place plaintiff said he desired to go, or he must get off at State Center, the next station. Plaintiff declined to pay, although he was requested to do so two or three times before the train reached State Center. When the train arrived at that place he was ejected by the conductor, who used no more force than was necessary. But there was evidence tending to prove, and the jury might have so found, that the conductor used insulting and profane language when he addressed the plaintiff on the train and while putting him off, and also that the conductor was intoxicated at the time. Such being the facts, what is the law?

The ticket purchased by the plaintiff at Clinton entitled him to passage over defendant's road, and to Sioux City. He was 2. RAILROADS: not compelled to take any particular train or start purchase of on any given day. He had the right of election ticket: contract. in this respect, and the defendant was, at least, bound to take him on any of its regular passenger trains, within a reasonable time after the purchase of the ticket.

The plaintiff elected to take a certain train and the defendant accepted him as a passenger thereon. By this election and acceptance the contract became complete and binding, and was to this effect: That the plaintiff should go through to his destination on that train, and the defendant bound itself to take him on that train but not otherwise, unless there existed some rule or regulation of the defendant by which the plaintiff had the right to stop off and resume his journey on some succeeding train. The red check delivered him by the conductor sufficiently advised the plaintiff of such right, and the conditions upon which he was entitled thereto. The plaintiff was bound to know that the ticket and check were not sufficient to enable him to do so, but that he must get a special check. The contract between the plaintiff and the defendant became, after he took his seat in a particular train that went through to his destination, an entirety; that is to say, neither party could require the other to perform it in parts; the plaintiff could not leave that train without the defendant's consent and take another, nor could the defendant require the plaintiff to leave such train and take another. Their rights and obligations in this respect were mutual. The reasons in favor of such rule are so many and obvious that it is unnecessary to take up time or space to state them. Besides this, the conclusions we have reached are sustained by authority. See *Hamilton v. N. Y. C. R. R. Co.*, 51 N. Y., 104; *Deitrich v. Pennsylvania R. R. Co.*, 71 Pa. St., 432; *Cheney v. B. & M. R. R. Co.*, 11 Met., 121; *C. C. & C. R. R. Co. v. Bartram*, 11 Ohio St., 457; *State v. Overton*, 4 Zabriskie, 438; *Johnson v. R. R. Co.*, 45 N. H., 213; *Beebe v. Ayres*, 28 Barb., 275.

The only case cited by counsel as being opposed to this strong current of authority is *Palmer v. Charlotte R. R. Co.*, 3 S. C., N. S., 580, and that case does not, on examination, do so. If it did we should feel inclined to disregard it. It is proper that we should say there was no evidence tending to show any misfortune, accident, or any other cause except his own volition that induced or caused the plaintiff to leave the train on which he commenced his journey.

When the plaintiff left the train at Marshalltown he volun-

tarily, and without the defendant's consent, violated the contract, and he had no right to demand to be carried on any of defendant's trains until a new contract had been entered into. The old contract was at an end, through his fault, and he could claim nothing thereunder. He was not bound to pay his fare before he entered the cars at Marshalltown, but when he took his seat with the design and intent of going to Boone in that train, and the defendant accepted him as a passenger, without requiring him to pay his fare before the train moved, a contract was entered into between them, by which the plaintiff was bound to pay his fare from Marshalltown to Boone, when demanded by the conductor, and the defendant was to carry him to his place of destination. The conductor required the plaintiff to pay his fare to Boone, and this he was justified in doing, because there is where plaintiff said he desired to go. If the plaintiff, at any time, had expressed a desire to only go to State Center, the conductor would not have been justified in demanding fare to Boone. It was for the plaintiff to say where he desired to go and the conductor to collect fare accordingly. The plaintiff did not, at any time, offer to pay his fare between State Center and Marshalltown, and he positively refused to pay the conductor anything.

When he refused to pay his fare when demanded by the conductor, as agent of the defendant, the plaintiff became a tres-

3. ——: non-payment of fare. passer, and he was not entitled to the rights and privileges of a passenger. It is obvious that he could not become a passenger without the payment of fare unless the defendant consented that he might do so. As he refused to pay, the plaintiff was rightfully ejected.

II. If the plaintiff was not a passenger and entitled to the rights, care and protection due to such persons from the defend-

4. ——: ——: misconduct of employes. ant, then he cannot claim or insist that the defendant shall employ gentlemanly and sober men as conductors. The fact, if such was the case, that the conductor was drunk, in no way or manner excuses plaintiff's breach of contract. Nor did he refuse to pay his fare because the conductor was drunk or abused him. His refusal was placed on ·the higher ground that the defendant had no right to demand

it. The ground upon which the plaintiff seeks to recover is that there was a breach of contract. In actions of tort we have held where an assault and battery has been committed by a conductor, or through his orders, on a passenger, that insult and injury may be shown. *McKinley v. C. N. W. R. Co.*, 44 Iowa, 314. The question in that case was very different from that in the case at bar.

*5. ——: breach of contract.*

The plaintiff must recover, if at all, by reason of a breach of contract. His action is not based on a tort. The damages that may be recovered in actions on contracts are tested and governed by entirely different rules from actions on torts. In the former, the damages must be such as fairly and naturally result from the breach of the contract. Insult and abuse accompanying a breach cannot affect the amount of the recovery in such actions. If the action is based on a wrong the jury are permitted to consider injury to feelings and many other matters which have no place in actions to recover damages for a breach of contract. *Walsh v. M. & St. P. R. Co.*, 42 Wis., 23.

III. The plaintiff offered to prove by himself, "that before and since the expulsion he had traveled on this road, and sometimes he was given a stop-over and sometimes nothing, and this, too, when requesting a stop-over." The court, however, sustained defendant's objection to this testimony, and the plaintiff excepted. It was not proposed to prove a general custom of the defendant, but only that the plaintiff's right to ride had been recognized by certain conductors, or at certain times, without his having a stop-over check. There was no error in the rejection of the proposed testimony. *Sherman v. C. & N. W. R. Co.*, 40 Iowa, 45.

*6. ——: evidence.*

IV. The plaintiff was asked, when on the stand as a witness, what "knowledge he had of the regulations of defendant as to stop-over tickets other than appeared on his ticket and check." An objection to this question was sustained. Grant that the plaintiff would have answered he had no other notice or knowledge than shown by the ticket and check, still no error was committed by the court. It was immaterial whether he had any other notice or not. The red check was all sufficient for this purpose, conceding that the plaintiff was entitled to notice.

V. After the plaintiff had been ejected he purchased a ticket from State Center to Boone, and sought to enter the train from which he had been ejected and was prevented from so doing by the conductor, who had knowledge that such a ticket had been purchased. In *O'Brien v. B. & W. R. Co.*, 15 Gray, 20, the train was stopped and the plaintiff rightfully ejected, and as the train started again the plaintiff got on the rear car. The conductor, being so informed, went to such car, and "although the plaintiff, before any attempt was made to stop the cars a second time, offered to pay whatever fare the conductor should demand," it was held that the second expulsion was justifiable. It is said by the court: "After being rightfully expelled from the train he could not again enter the same cars and require the defendants to perform the same contract he had broken." It is not necessary that we should go so far as was done in the case just quoted, because the plaintiff at no time offered to pay his fare from Marshalltown to State Center. He had just ridden on that train between those points, and, as we have seen, when he entered the cars he was bound to pay his fare to his destination. This he contracted to do, and the defendant contracted to carry him on that train and none other. This contract was broken by plaintiff, and he had no right to insist he should go on that train, at least without paying, or offering to pay, the fare between Marshalltown and State Center. This ruling by no means excludes him from any other train.

Besides this, suppose the plaintiff at State Center had tendered to the conductor his fare from that point to Boone, could it be claimed this would entitle him to ride on that train to the latter place? We apprehend not. The purchase of a ticket from the ticket agent would give him no greater rights. For under such ticket he would be claiming the same rights under the same state of facts he would not be entitled to had he dealt alone with the conductor. The fact that he made use of an agent of the company other than the conductor cannot enlarge his rights or change the legal aspect of the case. It must be that the transaction with the agent was a mere continuation of the transaction with the conductor. Both had refer-

ence to the right of the plaintiff to ride on that train without the payment of fare from Marshalltown to Boone.    The payment of such fare to the agent could not, under the circumstances, give him any more or greater rights than if he had tendered the same amount to the conductor.

VI.    It is insisted that the cause should have been submitted to the jury; that the evidence was conflicting whether the plaintiff was unconditionally forbidden to enter the train after he purchased the ticket at State Center.    We will assume that he was unconditionally forbidden.    It is apparent from what has been said this could make no difference.    It mattered not what the conductor said unless the plaintiff has shown he had the legal right to again enter that train.    This he has failed to do.

VII.    It is claimed that the cause should have been submitted to the jury for the purpose of passing on the plaintiff's intent, and whether he designed to defraud the company.    We incline to think, at least, he should have the benefit of any doubt there may be on that subject, that the plaintiff was acting in good faith and believed he was legally right.    In this he was mistaken, but his intent or good faith will not give him a right to recover.    That must, of necessity, depend on something else.

8. ——: ——: intent of passenger.

VIII.    The plaintiff insisted that before the jury could be directed to find for the defendant the latter "must admit on the *record* every fact the evidence tended to prove;" this the court declined to require done.    As the plaintiff has had the benefit of all the evidence tended to prove the failure to so enter the same of record is clearly error without prejudice.

IX.    The defendant, in a written motion, asked the court to direct the jury to find for the defendant, which was sustained, and the court wrote out the verdict and verbally instructed the foreman of the jury to sign it.    It is urged that the direction given the jury should have been in writing, and that reversible error has been committed by orally directing the jury to sign a verdict written out by the court.    We do not concur in this view.    What was said to the jury was in no sense instructions, or in the nature of such, which the Code requires should be in writing.

9. PRACTICE: verdict by direction of court.

Having, as we believe, referred to and disposed of all the points suggested by counsel in his argument, the result is there must be an affirmance.

AFFIRMED.