BARNARD, P. J., concurred ; GILBERT, J., did not sit.

Order reversed with costs and disbursements.

---

GILBERT S. TERRY, APPELLANT, v. THE FLUSHING, NORTH SHORE AND CENTRAL RAILROAD COMPANY, RESPONDENT.

*Railroad company — tickets issued by — right of passenger to stop over.*

On February seventeenth plaintiff purchased from defendant at Patchogue an excursion ticket to Brooklyn which stated, " Good until three days after date. Excursion ticket," and on the same rode to Brooklyn. On the following day he took a train from Brooklyn which arrived at Babylon late at night and did not connect with any train for Patchogue. He drove to the next station east,

remained there over night and in the morning took a train for Patchogue from which he was ejected by the conductor, in compliance with a regulation of the company providing that stop-over checks should not be given on excursion tickets.

*Held,* that the company were authorized to remove him, and that he was not entitled to recover, no unnecessary violence having been used.

That plaintiff, under his contract with the company, could only demand a continuous passage, and had no right to stop over at intermediate points.

APPEAL from a judgment in favor of the defendant entered upon a nonsuit ordered at the Circuit, and from an order denying a motion for a new trial made upon a case and exceptions.

*Miller & Tuthill,* for the appellant.

*Edward E. Sprague,* for the respondent. The defendant was entitled to make any and all reasonable rules with reference to the use of its tickets, and was not bound to make such rules known to the public except in response to inquiry. (*Dietrich* v. *Penn. R. R. Co.*, 71 Penn. St., 432 ; 3 Am. Railway Rep., 439, 440 ; *Cheney* v. *Boston and Me.*, 11 Metc., 121.) The plaintiff having elected to purchase a ticket of a peculiar character is chargeable with knowledge that the ticket was subject to restrictions, and was bound to inquire what those restrictions were. (*Dietrich* v. *Penn. R. R. Co.*, above cited.) The plaintiff voluntarily started from Brooklyn upon a local train which had no Patchogue connection at Babylon, and of that fact he is chargeable with knowledge. (*Gale* v. *D., L. and W.*, 7 Hun, 670.) The plaintiff had no right to stop over. He had a right to take any through train from Brooklyn to Patchogue (within the time limited) and to insist upon being carried through. This right was reciprocal ; "and the defendant had a right to insist that the plaintiff's journey should be continued until completed, and that defendant should not be required to perform in fragments." (*Gale* v. *D., L. and W.*, above cited ; *Churchill* v. *Chic. and Alton*, 3 Am. Railway Rep., 430 ; *Dietrich* v. *Penn. R. R.*, above cited ; *Cheney* v. *Boston and Me. R. R.*, 11 Metc., 121.)

DYKMAN, J.:

Railroad companies are common carriers of passengers as well as of freight and baggage. This results from their setting themselves

up for common public employment for hire. It is their duty, therefore, to receive all persons who apply for passage, provided the applicant is not an unfit person to be received, and has no evil design against the carrier in its business. The right of passage, however, is subject to the right of the carrier to prescribe reasonable regulations for the accommodations of passengers and for the due and orderly arrangment of the business. In the exercise of this right passenger carriers have found it convenient to adopt what is called the ticket system; that is, the practice of issuing tickets to all persons who pay their fares.

These tickets are vouchers that the fare has been paid. They do not constitute the contract with the passenger, although they may and often do have upon them some condition or limitation which enters into it and forms a part of it. The contract is made up of the ticket and the rules and regulations established by the carrier, and is what is known in law as an entire contract. The carrier undertakes, in consideration of the payment of a certain sum, to carry the passenger in safety from one point to another at or within a prescribed time. Time in these contracts is usually an important element, because inasmuch as the carrier is required to furnish accommodation for all persons who apply for passage on any day, it is of importance to know how many are to be carried, and this cannot be known if there are persons holding tickets who have the right to apply for passage along the route in numbers entirely unknown. This would lead to endless confusion and great discomfort, and to avoid these evils the railroad companies issue tickets which contain on their face a limitation of the time within which they are to be used, and then such limitation constitutes a part of the contract. They also make arrangements to run some of their trains past some stations and for stopping some trains at all stations, and they issue time tables which show how the trains are to be run in this respect. These are necessary and reasonable regulations and persons purchasing tickets do so with reference and subject to them, and become bound by them. In fact, as has been observed before, they form a part of the contract. If the passenger does not know of the existence of these rules and regulations, it is his duty to inform himself in respect to them, by proper inquiries before commencing his journey; especially is it his duty to ascertain by what train he

can start, of its time of departure and arrival, its stopping stations and his right to get off the train and to resume his trip on another.

In this case the plaintiff on the 17th day of February, 1876, purchased of the agent of the defendant at Patchogue, an excursion ticket from that place to Brooklyn, containing on its face the words, " Good until three days after date, excursion ticket." On this ticket he rode to Brooklyn on the same day, and on the following day he returned from Brooklyn on a train which reached Babylon late in the evening, and made no connection with any train for Patchogue. On arriving at Babylon the plaintiff drove to Bay Shore the next station east, and there spent the night, and on the morning of the nineteenth took the train at Bay Shore for Patchogue. It was a regulation of the company that stop-over checks were not given on excursion tickets, and when the plaintiff presented to the conductor the ticket above mentioned it was refused, and he was ejected from the car without unnecessary violence, and this action is brought to recover damages for such expulsion. The plaintiff was nonsuited at the Circuit, and within the rules hereinbefore mentioned that was a proper disposition of the case. The plaintiff had the right to a continuous passage from Brooklyn to Patchogue. The defendant had made a contract with him to carry him between those points, and he had the right to demand the passage on any day between the seventeenth and the nineteenth, but he could only demand a continuous passage ; he could not require the company to perform in fragments. Before taking his seat it was his duty to ascertain whether it would convey him to his place of destination.

So far as the terms of the plaintiff's contract were expressed on the ticket they were binding, of course, and that part of it was as follows : " Flushing, North Shore and Central Railroad. Brooklyn to Patchogue. Good until three days after date. Excursion ticket." This gave no right to any thing but a continuous passage, and he could not interpolate into it a provision permitting him to stop off of the train at intermediate points. In fact, no such right exists except by means of stop-over tickets, or the regulations of the company. (*Elmore* v. *Sands*, 54 N. Y., 515 ; *Beebe* v. *Ayres*, 28 Barb., 275 ; *Gale* v. *Delaware, L. and Western R. R. Co.*, 7 Hun, 670 ; *Dietrich* v. *Pennsylvania R. R. Co.*, 71 Penn., 432.)

The carriage of passengers by railroads has now come to be very

extensively carried on, and the rights, duties and liabilities of the companies and the passengers are well defined; and while the courts administer the law with severity against these companies in cases of negligence in the performance of their duties, they must, at the same time, be equally careful that nothing is imposed upon them beyond just legal responsibility.

The judgment must be affirmed.

Gilbert, J., concurred; Barnard, P. J., not sitting.

Judgment and order denying new trial affirmed, with costs.