ALEXANDER McNAMARA v. GREAT NORTHERN RAILWAY COMPANY.[1]

June 7, 1895.

Nos. 9399—(147).

**Railroad Company—Liability to Trespasser.**

By paying money to a brakeman on a freight train, a trespasser does not become a passenger, nor does he obtain any of a passenger's rights; for it is not within the scope or authority, apparent or real, of a brakeman to collect fare.

**Same.**

The only duty owing to a trespasser upon a railway train by the railway company is to refrain from wantonly inflicting an injury upon him. The

[1] Reported in 63 N. W. 726.

trainmen are not bound to use reasonable care to see that a trespasser does not expose himself to personal injury, although advised of his presence.

Appeal by defendant from an order of the district court for Stearns county, Searle, J., denying a motion for a new trial after a verdict in favor of plaintiff for $3,000. Reversed.

*M. D. Grover* and *C. Wellington,* for appellant.

*Taylor, Calhoun & Rhodes,* for respondent.

COLLINS, J. This is a personal injury case, in which plaintiff had a verdict. Taking the facts as testified to by him, they were as follows: For the purpose of stealing a ride on one of defendant's freight trains from Fergus Falls to St. Cloud, over 100 miles, plaintiff crawled into a box car at the place first named, just before the train started. Soon afterwards he was discovered by two brakemen, who demanded money from him. Pretending that he had but 52 cents, he gave them 37. He had $24 concealed in one of his shoes. Next morning, about daylight, the train broke in two, and plaintiff got out of the car, was seen by the conductor, and in reply to his inquiries told him that he had been on the train, and was going to St. Cloud. When the train was about to go onto a side track in the St. Cloud yard, running at the rate of two miles an hour, the conductor saw the plaintiff, who was then standing inside the car, with his head out of the small square door at the end.

The plaintiff's version of what was then said and done is, according to the record: "The conductor came along from the caboose. I was looking out through the end door, towards the engine. He stepped on the head car, and said: 'Halloo, there. You better get off now. This is St. Cloud.' I said, 'All right,' and he watched there till I got halfway out, and said, 'Close the door behind you,' and walked away." The plaintiff, without looking to see where he stepped, placed one foot on a drawbar, and soon after the cars came together, crushing the foot so that amputation became necessary. The plaintiff admitted that while riding on the train he had noticed that there was more or less play to this drawbar. He also testified that part of the deadwood of the car had been broken off, and for that reason he had to put his foot on the bar; but it appeared that he did not notice the defective condition of the deadwood until after

he was injured. He was aware that his foot was on the moving drawbar before the cars came together. There was no testimony tending to show that the conductor knew of the defective dead-wood, or that he knew that plaintiff had put his foot in a dangerous place. In fact, according to plaintiff, the conductor left the scene before he had gotten out of the car.

The plaintiff did not become a passenger, or obtain any of a passenger's rights, by paying over his money at the demands of the brakemen, for it is not within the scope of authority, apparent or real, of the latter, to collect fare. The plaintiff's conduct shows that he fully appreciated this, and well knew that he was perpetrating a fraud upon defendant, and was simply a trespasser on the train.

It is true, although plaintiff was a trespasser, that if the train-men knew he was in a dangerous position, was exposing himself to injury, they were bound to use reasonable care to avert and avoid such injury; but no such case was presented. The danger was not in getting out of the car, or off the train, but was in the placing of plaintiff's foot in a perilous position on the drawbar, and this was done after the conductor had talked with him, and had walked away. The latter knew nothing of the defect which, it is claimed, made it necessary for plaintiff to step where he did, and consequently could not have anticipated that he would step there. Nor was he obliged to wait, and see that plaintiff descended in a prudent manner. Nor did plaintiff himself know of such defect until after he was injured, so that he was not influenced or actuated by the apparent necessity of the situation. He stepped on the bar through heedlessness or accident, not because he realized that he was compelled to. Not a man on the train knew that his foot was in a dangerous position, except himself, and therefore the rule of reasonable care towards trespassers had no application. The trainmen were not obliged to use reasonable care to prevent plaintiff from exposing himself to a personal injury.

From the undisputed evidence it is clear that the only duty owing to plaintiff by defendant company was to refrain from wantonly inflicting an injury upon him, and there was not a circumstance in the case which in the slightest tended to show that there was a wanton injury. When addressing him at the yard, as the cars were moving more slowly than a man would ordinarily walk, the

conductor did not drive him from the train, nor were his words at all harsh or reprehensible. He requested the plaintiff to get off, in a very amiable manner, considering the occasion, and we could have readily excused more vigorous language. No wrong upon the part of the company was shown, and the cause should have been dismissed when plaintiff rested.

Order reversed.