MICHAEL JANNY v. GREAT NORTHERN RAILWAY COMPANY.[1]

January 8, 1896.

Nos. 9705—(238).

**Railway—Trespasser on Train—Duty of Company.**

A party who, on the invitation of the brakemen of a railway freight train, who have no authority to receive passengers or collect their fares, takes passage in an exclusively freight car, loaded with freight, paying to the brakemen less than the regular fare, is not a passenger, and the railway company owes him no duty as such.

**Verdict not Sustained.**

Evidence considered, and *held* that it does not sustain the verdict.

Appeal by defendant from an order of the district court for Ramsey county, C. D. Kerr, J., denying a motion for a new trial. Reversed.

*C. Wellington*, for appellant.

*Kueffner, Fauntleroy & Rice*, for respondent.

START, C. J.   This is an action for the recovery of damages, which the plaintiff claims to have sustained by reason of an assault and robbery committed upon him by the defendant's employés while he was a passenger upon its railway train.   He recovered a verdict for $268.33, and the defendant appeals from an order denying its motion for a new trial.

The plaintiff alleges in his complaint that he was, on September 7, 1894, a passenger for hire on the defendant's railway train from Crookston to Barnesville in this state, and that after the train reached the latter place, and while he was still a passenger, he was assaulted and robbed of $75 by the defendant's employés.   These allegations are denied by the answer, but the verdict declares their substantial truth, the jury finding specially that plaintiff was such passenger.   The question, then, here for decision is whether the verdict is sustained by the evidence and the law applicable thereto.   The verdict cannot be sustained if the relation of carrier and passenger did not exist between the parties at the time of the alleged assault upon the plaintiff.   This conclusion necessarily follows from

[1] Reported in 65 N. W. 450.

the issues made by the pleadings, and the basis upon which the case was submitted by the trial court to the jury, which was that the plaintiff sued as a passenger, and, if he was, then the defendant owed him the duty of exercising the highest degree of human care for his safety.

We are of the opinion that the finding of the jury that the plaintiff was a passenger on the defendant's railway at the time of the assault upon him is not sustained by the evidence, but is so manifestly against the evidence that it must be set aside. The relation of passenger and carrier is created by contract, express or implied, and we are unable to find any evidence in the record warranting the inference that this contract relation ever existed between the parties hereto. The fair import of the plaintiff's own evidence is that, as to the defendant, he was a mere stowaway, whom the employés of the defendant fraudulently secreted, with his collusive co-operation, in an exclusively freight car, half filled with grain, for the purpose of enabling him to ride at less than half fare, to be paid to such employés for their personal use.

It was established on the trial, beyond reasonable controversy, that some time during the forenoon of September 7, 1894, a freight train of the defendant, in charge of a conductor, with two brakemen, arrived at Crookston on its way to its destination, Barnesville, where it arrived at 8:55 o'clock p. m. of the same day. There was a caboose attached to the train, and the conductor was authorized to receive and carry passengers on his train in the caboose, and was prohibited from carrying them in any other place. Neither of his brakemen had any authority to collect fares from passengers. It did not appear that notice of these rules was ever brought directly to the attention of the plaintiff, or that the conductor wore any badge or mark designating him as such. The fare for a passenger from Crookston to Barnesville was $2.55, and at the time in question the defendant had a ticket office opened at Crookston for the sale of tickets to passengers. The plaintiff did not speak English, and had never before ridden on a freight train, but he had been in this country two years, and had traveled on passenger trains.

The plaintiff's testimony as to his taking passage on the freight train, to which we have referred, and what happened to him, is substantially as follows: That he arrived at the Crookston sta-

tion with two companions, his brother, Joseph Janny, and Michael Lasar, on the morning of September 7, and they were informed that no passenger train would leave until evening, and while at the station the freight train came along, with three men on it, who winked at the plaintiff and his companions, and motioned to them to get on the train, and then Lasar, who understood English, went and spoke to the trainmen, the plaintiff and his brother following. One of the trainmen spoke to the plaintiff in German, and told him that the party could get on and ride, and, to the inquiry of the plaintiff as to riding on the train, he was answered that the train was all right, and then this trainman broke open the door of a freight car, wrote down its number, and gave it to one of the party, and told them to get in, and they did so. This car was loaded with barley, and afterwards other men got into the same car at points along the line, so that there were some 12 persons in the car when it reached Barnesville. That all three of the trainmen saw the plaintiff and companions when they got onto the train, and told them to get on. That, in order to get into the car, a small door in the end thereof, about two feet square, had to be broken open, and the party climbed up three or more feet to this opening, and crawled into the car upon the top of the barley, and, after the train started, two men (afterwards identified as the two brakemen) came into the car, and demanded one dollar each of the party, and the plaintiff paid the dollar demanded of him. That the party had no time to investigate or buy tickets after they were told that they could go on the train. That it was dark when the train reached Barnesville, and that he did not know the exact time, but thought it was about 12 o'clock, and that, soon after the arrival of the train, one of the brakemen came into the car, flourishing a revolver, and ordered all persons out. That the plaintiff was hit by a revolver in getting out of the car, and then two men held a revolver in front of him, and a third took from his pocket $75. The plaintiff also testified that he did not know that passengers on freight trains must ride in the caboose.

The two companions of plaintiff gave testimony substantially corroborating him, and one of them testified that he had ridden on freight trains before, and knew that the caboose was the place where passengers rode, but that they were told by the trainmen that the

caboose was filled, and that they would have to stand up, and it was better for them to go into the car; that they could lie down there, and that the men who invited them into the car were the same two brakemen who afterwards came in and collected the money, and that he thought they were collecting fares. The conductor and the two brakemen denied absolutely the story of the plaintiff and his companions, and severally testified that they had no knowledge of the presence of the plaintiff or his companions upon the train.

We do not deem it necessary to state the evidence more in detail, but we have examined the whole record, and have reached the conclusion that the finding of the jury that the plaintiff was a passenger is not sustained by the evidence or the law of the case. None of the trainmen had any authority to carry passengers on this train in question, except in the caboose, and the external and internal appearance of the car into which the plaintiff was, as he claims, invited, the mode of entrance into it by breaking the door, and the fact that it was loaded with grain, all negative any apparent authority of the brakemen to collect his fare, and carry him in this exclusively freight car as a passenger, for whose safety the defendant was bound to exercise the highest degree of care. These physical facts were notice to him that he was not a passenger, and that the trainmen had no authority to collect his fare or carry him in this car. What his rights would have been if he had paid his full fare to a brakeman while riding in the caboose we need not determine, for the case with which we have to deal is one where the plaintiff was riding in a car, the very appearance of which would indicate to the most inexperienced that it was not used by the defendant for the carriage of passengers. Everything connected with the entrance of the plaintiff into this car, from the wink and the motions of the trainmen when he first saw them, to the breaking of the car door and his getting into the car, must have made it perfectly manifest to him that the brakemen were acting, not only beyond the actual line of their duty, but beyond the apparent scope of their authority, and that he was in a place where he had no right to be.

A carrier, in undertaking to carry passengers safely, undertakes to do so only on condition that they place themselves under his directions in the particular places set apart for their accommodation;

and we hold, as a matter of law, that a party who, on the invitation of the brakemen of a railway freight train, who have no authority to receive passengers or to collect their fares, takes passage in an exclusively freight car, loaded with freight, paying to the brakemen less than the regular fare, is not a passenger, and the railway company owes him no duty as such.

Order reversed, and a new trial granted.