## HENRY TUDER v. OREGON SHORT LINE RAILROAD COMPANY.[1]

January 5, 1917.

Nos. 20,022—(172).

**Carrier — when plaintiff ceased to be a passenger.**

1. Plaintiff had taken passage on one of defendant's passenger trains, paying his fare between certain points on the line; at an intermediate station during a short stop plaintiff left the train and proceeded to a restaurant a block and a half away for refreshments; when he returned to the station he found that his train had departed. It is *held* that the relation of passenger and carrier ceased upon plaintiff's failure to return to the station in time to resume his journey upon the train, and that he had no right as a matter of law to continue the journey upon some other train without further payment of fare.

**Carrier — when plaintiff became a trespasser.**

2. He took passage upon a freight train without payment of fare, with the consent of the engineer, riding upon a flat car loaded with rock, from which he was thrown by a violent jerk of the train and injured; it is *held* that he was not a passenger while so riding upon the freight train.

[1]Reported in 160 N. W. 785.

---

Note.—On duty and liability of carrier to passenger who alights temporarily at intermediate point, see note in 51 L.R.A.(N.S.) 899.

The engineer was without authority to accept him as a passenger, and he was in fact and law a trespasser thereon.

**Questions for the court.**

3. The evidence did not require the submission of the case to the jury, upon the question of passenger and carrier, or of injury by wilful negligence.

Action in the district court for Ramsey county to recover $50,000 for personal injury received by plaintiff minor. The answer alleged that the injury resulted directly from plaintiff's own carelessness and his failure to exercise ordinary care to avoid injury, and that, if he was riding in the manner alleged in the complaint, he assumed the risk of injury to himself. The case was tried before Michael, J., who at the close of the testimony granted defendant's motion for a directed verdict in its favor. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Barton & Kay* and *Walter D. Corrigan,* for appellant.

*Edward P. Sanborn,* for respondent.

BROWN, C. J.

Action for personal injuries in which, at the close of the trial, the court directed a verdict for defendant and plaintiff appealed from an order denying a new trial.

The assignments of error present the single question whether the trial court erred in directing a verdict for defendant. We answer the question in the negative.

The facts as disclosed by the evidence, construed most favorably to plaintiff, are as follows: Plaintiff at the time of the injury complained of was in the neighborhood of 18 years of age, an Austrian, and not very familiar with the English language, though he could speak and understand the same to some extent. He resided at Milwaukee, Wisconsin, but in September, 1913, was at Butte, Montana, in search of employment. He visited an employment agency and was hired with other laborers for some concern engaged in operations in Utah, near the city of Ogden. Plaintiff was not certain of the name of his prospective employer or his place of business. However, he with others so hired, in charge of a foreman, took

passage on one of defendant's trains running between Butte and Ogden, arriving at the latter point about 11 o'clock a. m. the following day. Plaintiff paid a fee of two dollars to the employment agency and was given a check or tag, evidently for identification, which he placed in his hat. The foreman paid the railroad fare of all the men and the conductor supplied plaintiff with another check which he also placed in his hat. The destination of the men, as plaintiff testified, was some point south of Ogden, just where he did not know. When the train arrived at Ogden it was announced by the conductor and also the foreman that there would be time for lunch, though it was not stated how much time would be allotted for that purpose. There was a lunch counter within the station building available to all who wished to patronize the same. For some reason, not particularly important, plaintiff did not go to the station for his lunch, but instead thereof left the premises of the railroad company and proceeded to a Chinese restaurant something like a block and a half away. He there procured refreshments and in about 15 or 20 minutes returned to the station. When he came back he found that his train had gone on its way south. Whatever baggage plaintiff had with him was on the train, and he had no transportation, or evidence thereof other than the checks he carried in his hat. He approached some one at the station he assumed to be either the station agent or a ticket seller, and made known his situation. He testified that the person so approached informed him that there was no other passenger train going south that day, but that a freight train was going out soon, and he was directed to the point in the yard where the train might be found. It may be here remarked in passing, that plaintiff either received no information as to other passenger trains going south that day, or misunderstood the information given him, for the evidence makes it clear that there were other passenger trains on the same line either of which plaintiff could have taken. But this is not important, for we must assume that plaintiff was informed to the contrary and that he acted thereon. After his talk with the agent plaintiff proceeded into the yard some distance from the station until he came to a freight train about ready to leave. He inquired of a person he found oiling the engine, whom he took to be the engineer, as to the destination of the train, stating to him his situation, that the train he came in on had gone on its way while he was at a restaurant, and that he desired to take

passage on the freight train. He testified that the engineer informed him that he might do so, and directed him to climb onto one of the cars near the engine. Plaintiff did so, and got upon a flat or gondola car which was loaded with crushed rock. The load of rock came within five inches of the top of the sides of the car, and his presence on the car, four or five feet from the end thereof, was plainly observable. He testified that the conductor of the train passed after he had so taken his position on the car and noticed his presence, but made no objection, and passed on to the caboose, soon after which the train pulled out. A few miles out of Ogden and when going up a long grade plaintiff testified that there came two sudden jerks of the train, backward and forward, and of such violence as to throw plaintiff over the end of the car to the track where his legs were run over and cut off; one at the knee, the other a few inches below the knee.

Such is the case as made by plaintiff's testimony, and what has been said covers the evidence in point of substance, and further details are unnecessary. There is no dispute but that plaintiff was injured at the time stated, and that he in some manner fell between the cars of the train, and lost his legs. Two of the trainmen testified that they noticed plaintiff on or near the track as the train was on its way up the grade, which was on a curve, and that in an effort to board the train while it was in motion he received the injury of which he complains. But whether he was thus injured, or in the manner claimed by him was a question of fact, and for the purposes of the case we assume that plaintiff's story expresses the truth in the premises. And upon that basis we dispose of the appeal.

Plaintiff relies for recovery upon two contentions, namely: (1) That the relation of passenger and carrier existed between the parties entitling plaintiff to protection as such; and (2) that, though plaintiff was not a passenger but a trespasser upon the train, he is entitled to recover for any injury occasioned by the wilful negligence of defendant. And his counsel earnestly insist that the evidence made both contentions issues of fact, and that the court erred in taking the same from the jury by an instructed verdict. We are unable to adopt that view of the case.

There is no doubt of the fact that from Butte to Ogden plaintiff was a passenger. He was a member of the crew of laborers and his passage was paid to the point of destination beyond Ogden. But when he left the premises of the company at Ogden, on a mission of his own, remaining

until his train had departed and gone its way, his rights as a passenger ceased and ended. Of course, if he had returned before the train pulled out, he would have had the right to continue his journey thereon. DeKay v. Chicago, M. & St. P. Ry. Co. 41 Minn. 178, 43 N. W. 182, 4 L.R.A. 632, 16 Am. St. 687. But upon returning and finding that his train had gone he clearly had no right as a matter of law to continue his journey upon some other train. Wyman v. Northern Pacific R. Co. 34 Minn. 210, 25 N. W. 349. 2 Notes on Minn. Reports 784; Stone v. Chicago & N. W. Ry. Co. 47 Iowa, 82, 29 Am. Rep. 458; Hatten v. Newark & J. C. Ry. Co. 39 Oh. St. 375. He therefore was not a passenger upon the freight train, unless it be held that the suggestion to him by the ticket seller that he could take passage thereon, the statement of the engineer of that train that he might ride upon the car loaded with stone, coupled with the further fact that the conductor of the train saw plaintiff upon that car and interposed no objection, were sufficient to take the question to and justify the jury in finding that the relation of passenger and carrier existed between the parties. We are clear, under our own decisions and without regard to the authorities elsewhere, that the evidence referred to was wholly insufficient to require a submission of the case to the jury. There is no evidence that the ticket seller had authority of the character sought to attribute to him, it is clear that the engineer had no authority to accept plaintiff as a passenger, and it affirmatively appears that the conductor had no such authority. But the conductor did not accept plaintiff as a passenger. No fare was paid, and it is a matter of pure speculation whether he understood that plaintiff, by being upon the car, intended to continue thereon after the train pulled out, or whether he was a mere idler. At any rate there is no evidence that any of the employees referred to, including the conductor, had any authority to bind defendant to the relation of passenger and carrier, in the place plaintiff had located himself upon the car loaded with crushed rock. Janny v. Great Northern Ry. Co. 63 Minn. 380, 65 N. W. 450; Brevig v. Chicago, St. P. M. & O. Ry. Co. 64 Minn. 168, 66 N. W. 401; McNamara v. Great Northern Ry. Co. 61 Minn. 296, 63 N. W. 726; Baltimore & O. S. W. Ry. Co. v. Cox, 66 Oh. St. 276, 64 N. E. 119, 90 Am. St. 583; Virginia Midland R. Co. v. Roach, 83 Va. 375, 5 S. E. 175.

2. The second contention, namely, that though plaintiff was not a pas-

senger and was without the right of protection as such, and was a trespasser upon the train, yet he is entitled to recover upon the theory that his injury was the result of the wilful negligence of the engineer of the train in so operating his engine as to cause the violent jerk which threw plaintiff from the car, does not require extended discussion. We are unable from the record to sustain the claim. There is no evidence that the engineer knew, or that he ought to have known, that plaintiff was in a position of peril when the train was moving up the grade, and no evidence that the jerk of the train of which plaintiff complains was the result of any negligent act, or anything outside of or beyond that usually incident to the operation of the train at this point. Plaintiff, by taking a position upon the car, assumed all ordinary risks to which he was thus exposed, and cannot complain of the rough handling of the train, in the absence of some clear showing of a wilful disregard of his safety by the engineer. We find no such showing.

Order affirmed.